IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SUE BONAR AND RAY LUCERO,

    Plaintiffs,

v.                                        CV 08-0581 WPL/CEG

OFFICE MAX, INC.,

    Defendant/Third-Party Plaintiff,

v.

EMPIRE WAREHOUSE COMPANY D/B/A
EMPIRE MOVING AND STORAGE,

    Third-Party Defendant.

## ORDER

Plaintiffs Sue Bonar and Ray Lucero, a husband and wife, sued Office Max, Inc. for negligence and loss of consortium.[1] The matter is before me now on Plaintiffs' motion to amend their complaint to add a punitive damages claim. For the reasons that follow, I will deny the motion.

### FACTUAL AND PROCEDURAL BACKGROUND

This suit arises from an accident in which a hutch fell on Bonar. Office Max sold the hutch and a desk to Bonar's employer, New Mexico State University. According to Plaintiffs' original complaint, the hutch was designed to sit on top of the desk. The desk and hutch were supposed to be attached to one another by two-sided adhesive tape that was affixed to the hutch. The original complaint alleges that Office Max's local sales and service representatives delivered and assembled the desk and hutch, but failed to remove the protective covering from the adhesive tape on the

---

[1] Defendant asserts that its actual name is OfficeMax North America, Inc. (*See, e.g.*, Doc. 1 at 1.) I will refer to it simply as "Office Max" in this order.

bottom of the hutch before placing the hutch on the desk.  Shortly after the desk and hutch were delivered, one of Bonar's co-workers bumped into the desk, causing the hutch to fall on Bonar.  As a result, she suffered a severe head trauma, a pelvic injury, and neck and back pain.  The original complaint asserts that Office Max was negligent because it knew or should have known that failing to remove the covering from the adhesive tape before installing it would cause the hutch to tip over if the desk or hutch were bumped; because it did not properly train and supervise its employees in proper installation techniques; and because it did not follow the manufacturer's installation instructions.

Office Max never filed an answer in this Court to Plaintiffs' original complaint.  It did, however, file a third-party complaint against Empire Warehouse Company, alleging that Empire actually delivered and assembled the desk and hutch.  Office Max seeks indemnification in the event that damages are assessed against it for Empire's negligence.

In November 2008, Judge Garza conducted a scheduling conference and assigned the case to a 180-day discovery track, with discovery ending on May 11, 2009.  (Doc. 24, 26.)  Plaintiffs were granted until November 14, 2008 to amend their complaint or add parties and Defendants were granted until November 28, 2008 to amend their pleadings or add parties.  (Doc. 26.)  Empire filed a timely third-party complaint, seeking indemnification from the manufacturer of the desk and hutch.  (Doc. 29.)

On January 27, 2009, the manufacturer answered the third-party complaint against it.  (Doc. 32.)  A couple of weeks later, the parties filed a joint motion to vacate the pretrial deadlines.  The motion indicated that no discovery had been undertaken in anticipation of the manufacturer's appearance in the case.  (Doc. 37.)  Judge Garza granted the motion in part.  She extended the

deadlines for disclosure of expert witnesses, but declined to extend any other deadlines at that time. (Doc. 43.)

Shortly thereafter, I set trial for November 16, 2009, and Empire's third-party complaint against the manufacturer was voluntarily dismissed. (Doc. 45, 47, 48.)

On April 27, 2009, Plaintiffs filed an unopposed motion to extend the discovery deadline for sixty days—to July 11, 2009. (Doc. 53.) Judge Garza granted the motion in part, extending the discovery deadline to June 10, 2009. (Doc. 54.)

On August 14, 2009, Plaintiffs filed their motion to amend. They argue that Office Max exhibited recklessness and "an alarming corporate indifference to the safety of its customers" simply to save money on training that would have prevented the accident that caused their injuries. (Doc. 73 ¶ 13.) In support of this argument, they state that Mercedes Flores, a furniture business development manager for Office Max, testified at her deposition that Empire asked Office Max to "send an experienced installer to kind of train them the first couple of times to show them how to install and make sure that they were doing it correctly." (*Id.* ¶ 10.) Flores discussed this request with Toby Tobin, who told her, "[W]e would provide Empire with the installation instructions and that the cost to send Vazquez down to El Paso was just too great and we could not absorb that cost." (*Id.*).[2]

Plaintiffs also point out in their motion that the instructions shipped with the desk and hutch warned that the desk and hutch "are not to be used without the mounting tape, and that the failure

---

[2] Plaintiffs have not attached a copy of Flores's deposition, but simply provide a 31-line quotation in their motion. Although it is not clear from the quotation whether Empire requested training for the particular desk and hutch at issue here or just training in general, Plaintiffs allege in the proposed amended complaint that Empire requested training regarding Office Max's products for "the first few times that Empire performed jobs for Defendant Office Max." (Am. Compl. ¶ 12.) The proposed amended complaint also indicates that Tobin was a district sales manager for Office Max. (*Id.* ¶¶ 44-45.)

3

to follow the instructions can cause the hutch to tip and fall, resulting in severe injury." (*Id.* ¶ 12.) Plaintiffs do not reveal when they learned of these instructions, but the original complaint alleges that Office Max was negligent in failing to follow the manufacturer's installation instructions. Plaintiffs further state that an unnamed employee of Empire testified at some unspecified time that an Office Max sales representative was present for the delivery and installation of the desk and hutch. That employee directed that the hutch be placed on top of the desk unattached without reading the instructions.[3] Plaintiffs conclude, "The net effect of Defendant Office Max's desire to save money and the failure of Defendant Office Max's employee to read the instructions that came with the desk and hutch was that Defendant Office Max placed into use . . . a product that was dangerously unsafe." (*Id.* ¶14.)

Regarding the timing of their motion to amend, Plaintiffs claim that they were not aware of Office Max's "emphasis on the saving of cost at the expense of the safety of its customers" until Flores's deposition was taken on June 25, 2009. (*Id.* ¶ 15.) Plaintiffs received a copy of the deposition on July 6, 2009. Their counsel was not able to submit the motion to amend until August 14, 2009 because of a twelve-day jury trial that ended on July 28, 2009. Plaintiffs maintain that no additional discovery, documentary evidence, or witnesses will be required to develop their proposed punitive damages claim and that the trial date will not have to be vacated. (*Id.* ¶¶ 15, 16, 18.)

Office Max contends that Plaintiffs' motion to amend is untimely and prejudicial. Office Max further asserts that Plaintiffs have failed to state a claim for punitive damages. (*See* Doc. 78.)

---

[3] Plaintiffs violated this Court's local rules by failing to cite to the employee's deposition. *See* D.N.M.LR-Civ. 7.3(b).

4

## STANDARDS FOR PUNITIVE DAMAGES

The parties agree that the substantive law of New Mexico governs this case. (Doc. 23 at 3.) Under New Mexico law, punitive damages may be awarded for conduct that is malicious, willful, reckless, wanton, fraudulent, or in bad faith. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 995 (10th Cir. 1999). In their proposed amended complaint, the Bonars allege that Office Max's conduct was reckless or willful. "Reckless conduct is the intentional doing of an act with utter indifference to the consequences." N.M. UJI 13-1827. "Willful conduct is the intentional doing of an act with knowledge that harm may result." *Id.*

## STANDARDS FOR AMENDING A COMPLAINT

Without leave of court, a party may amend a pleading once as a matter of course before being served with a responsive pleading or—if a responsive pleading is not allowed and the action is not yet on the trial calendar—within twenty days after serving the pleading. FED. R. CIV. P. 15(a)(1). After service of a responsive pleading, a party may amend only with the opposing party's consent or with leave of court. FED. R. CIV. P. 15(a)(2). Leave should be freely given "when justice so requires." *Id.* Leave may be denied because of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

This case presents a question as to whether Plaintiffs have a right to amend as a matter of course under Rule 15(a)(1) or whether they may amend only with leave of court under Rule 15(a)(2). There is nothing to indicate that Office Max ever served a responsive pleading to Plaintiffs' original complaint. As noted above, Office Max has not filed an answer in this Court. But none of the parties has noted Office Max's failure to file an answer and their briefing assumes

that the standard of Rule 15(a)(2) applies.  Because of the unusual procedural posture of this case, I agree that Rule 15(a)(2) should apply.

Although no answer has been filed by Office Max, this case is practically ready for trial.  An initial scheduling conference and two settlement conferences have been held, a deadline for amending pleadings has been set, and the parties have submitted both a joint scheduling order and a proposed pretrial order.  The trial is scheduled for November 16th.  To allow Plaintiffs to amend their complaint at this juncture based solely on the anomalous failure of Office Max to file an answer would be disruptive to the orderly progression of the case.

Moreover, a plaintiff does not have an absolute right to amend before a responsive pleading is served. The Seventh Circuit has held that a court may always disallow a futile amendment.  *See Crestview Vill. Apartments v. U.S. Dep't of Housing & Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004).  *But see Williams v. Bd. of Regents of the Univ. Sys. of Ga.*, 477 F.3d 1282, 1292 n.6 (11th Cir. 2007) (holding that a court has no discretion to reject an amended complaint as futile if it is filed before service of a responsive pleading).  The Tenth Circuit has followed the Seventh Circuit's approach in a published case without making the express holding and has made the express holding in unpublished cases.  *See Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992); *see also Hafen v. Carter*, 248 F. App'x 43, 46 (10th Cir. 2007) (citing *Crestview* for the proposition that the right to amend before a responsive pleading is not absolute); *Cotner v. Okla. ex rel. Creek County*, No. 95-6109, 1995 WL 422861, at *1 n.2 (10th Cir. July 19, 1995) (citing *Ketchum* for the proposition that a court may deny an amendment before a responsive pleading is filed if the amendment is clearly futile).  Based on this authority and the unusual procedural posture of this case, I will analyze Plaintiffs' amendment under the standards that govern whether leave to amend should be granted.

## PLAINTIFFS' MOTION IS UNTIMELY

Delay in itself cannot justify denial of leave to amend. *Minter*, 451 F.3d at 1205. But leave may be denied when the party seeking to amend does not provide an adequate explanation for the delay. *Id.* at 1206. The longer the delay, the more likely leave will be denied. *Id.* at 1205.

Judge Garza set November 14, 2008 as the deadline for Plaintiffs to amend their complaint. This date was proposed by the parties in their Joint Status Report and Provisional Discovery Plan. (Doc. 23.) Plaintiffs' motion comes nine months after this deadline, and Plaintiffs have not provided an adequate explanation for the delay.

Plaintiffs contend that they did not uncover the basis for their punitive damages claim until Flores was deposed. They assert that the depositions of Flores and other employees of Empire and Office Max were put off because of "the delay in permissible discovery occasioned by the joinder of" the two third-party defendants. (Doc. 73 ¶ 6.)

Office Max's third-party complaint against Empire was filed before the case was removed to this Court in June 2008. Empire answered on September 29, 2008 (Doc. 17) and participated in the initial scheduling conference before Judge Garza (Doc. 24). Accordingly, the delay cannot be attributable to the joinder of Empire.

The other third-party defendant, the manufacturer of the desk and hutch, answered the third-party complaint on January 27, 2009. Under the original discovery deadline (May 11, 2009), the parties had over three months after this answer was filed to conduct discovery. Plaintiffs sought an extension of the discovery deadline shortly before it expired, citing the following reasons: the removal from state court; the joinder of the two third-party defendants; and the parties' decision to delay discovery until after a settlement conference was held on April 13, 2009. (Doc. 53.) Because the removal from state court and the joinder of Empire occurred before the pretrial deadlines were

set, these reasons do not justify the delay in conducting discovery. And although the parties' decision to delay discovery until after the settlement conference is perhaps understandable, it was their choice to do so. Nevertheless, the joinder of the manufacturer and the parties' decision to defer discovery until after the settlement conference may provide some justification for the delay in taking Flores's deposition.

But Plaintiffs do not adequately explain the delay in taking Flores's deposition between April 13 and June 25, 2009, nor do they adequately explain the delay in filing their motion after the deposition was taken. Judge Garza granted Plaintiffs' motion to extend the discovery deadline and set a new deadline of June 10, 2009. Plaintiffs do not even attempt to explain why Flores's deposition was taken two weeks after this deadline. And although the deposition was taken on June 25, Plaintiffs did not file their motion to amend until August 14—over seven weeks later. They attempt to excuse this delay on two grounds. First, they claim that they did not receive a copy of the deposition until July 6, but they do not explain the significance of this claim. They do not state that they were unrepresented at the deposition. Second, they claim that they could not prepare the motion because of a twelve-day trial that ended on July 28. Assuming counsel needed ten days to prepare for the trial after receiving a copy of the deposition, Plaintiffs do not explain why it took them more than two additional weeks after the trial to submit the motion.

Although the unexplained delays between April 13 and August 14 do not cover great amounts of time, they are significant because of the November 16 trial setting. The deadline for filing dispositive motions was July 10, 2009. (Doc. 54.) Office Max asserts that the amendment would be unfairly prejudicial because it would not have an opportunity to file a motion for summary judgment on the punitive damages claim. If I allowed the amendment, I would set a new deadline for Office Max to file a summary judgment motion on the new claim. That, however, would result

8

in vacating the trial setting so that the motion could be briefed and ruled on before trial. Even if no new discovery had to be undertaken regarding punitive damages, it is highly unlikely that a summary judgment motion could be briefed up and ruled on before November 16.

### PLAINTIFFS' PROPOSED AMENDMENT IS FUTILE

Plaintiffs assert that an amended complaint is not futile unless it would not survive a motion to dismiss. Actually, an amended complaint is futile if it would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment. *Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001). In its response, Office Max submitted excerpts from two depositions and a copy of the assembly instructions for the desk and hutch. Based on this evidence, Office Max argues that assembling the desk and hutch was so simple that training was unnecessary. Therefore, Office Max argues, it did not exhibit an alarming indifference to safety by failing to provide training. Plaintiffs contend that no additional discovery will be required to develop their punitive damages claim. They rely on Flores's deposition testimony that Office Max refused to provide training for financial reasons. It thus appears that the issue of futility is ripe for a decision under the summary judgment standard.

However, I find it unnecessary to apply the summary judgment standard because Plaintiffs' proposed amendment is futile under the standard used for motions to dismiss. Contrary to Plaintiffs' argument, this standard is not "whether any facts could be proved in support of the complaint which would entitle the pleader to relief." (Doc. 83 at 10 (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).) Rather, a motion to dismiss should be granted unless the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley v. Gibson*).

9

I turn now to the proposed amended complaint itself, accepting as true all of its factual allegations. *See id.* at 555-56. In the punitive damages count, Plaintiffs allege that Office Max should have known that the installers were unqualified and untrained to install the desk and hutch; that Office Max refused to authorize the training requested by Empire because of the cost of providing the training; that an Office Max employee directed an Empire employee to place the hutch on the desk without attaching them and without reviewing the assembly instructions; and that although the assembly instructions for the desk and hutch explicitly warned of the danger created by failing to use the mounting tape, Office Max did not train its employees and agents to review the assembly instructions. (Am. Compl ¶¶ 41-51.) The punitive damages count concludes by stating that Plaintiffs are entitled to punitive damages for Office Max's "willful and reckless corporate indifference . . . in the failure to train and supervise its employees and agents in the delivery, assembly, and installation of the desk and hutch . . . ." (*Id.* ¶ 52.)

Thus, the punitive damages count alleges a failure to supervise and train. Although this is a recognized basis for tort liability, not every failure to supervise or train merits punitive damages. Plaintiffs make clear in their motion to amend that they believe Office Max's failure to supervise and train merits punitive damages because Office Max refused to provide requested training to Empire due to the cost of the training. However, Plaintiffs have not cited, and I have not found, any authority stating that a company subjects itself to punitive damages merely by basing its decision on financial considerations. What is missing from the proposed punitive damages count is any allegation that Office Max knew or should have known that failing to provide the training heightened the risk of danger associated with the desk and hutch. *See Enriquez v. Cochran*, 967 P.2d 1136, 1168-69 (N.M. Ct. App.), *cert. denied*, 972 P.2d 351 (N.M. 1998). In fact, the proposed

amended complaint suggests that Office Max could not have anticipated that failing to train Empire's employees would result in any harm.

As Office Max points out, the manner of assembling the desk and hutch was simple and straightforward. Plaintiffs' proposed amended complaint alleges that the hutch was designed to sit atop the desk, attached by the two-sided tape. (Am. Comp. ¶ 15.) It further alleges that the assembly instructions provide direction on how the hutch is to be placed on the desk, how the tape is to be removed, and how the hutch is to be attached to the desk. (*Id.* ¶ 16.) The instructions warn that the desk and hutch should not be used without the mounting tape and that failing to follow the instructions can cause the hutch to tip and fall, causing severe injury. (*Id.* ¶¶ 17-18.) Given the simplicity of the assembly process and the explicitness of the assembly instructions, Office Max's failure to provide training does not, as a matter of law, rise to the level of willfulness or recklessness required to support a claim for punitive damages.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion to amend their complaint is denied.

IT IS SO ORDERED.

*William P. Lynch*
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.